UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:19-cr-10016-DPW |
| | ) | |
| JOQUENTZ CONSTANT | ) | |

**DEFENDANT'S MOTION FOR ATTORNEY CONDUCTED
VOIR DIRE ON IMPLICIT RACIAL BIAS**

Defendant Joquentz Constant, by and through his counsel, moves the Court for an Order allowing counsel for the parties to question the potential jurors on issues of implicit race bias.

Joquentz Constant is an African-American man charged with possessing a firearm in violation of 18 U.S.C. § 922(g). He seeks an order that would allow the lawyers to voir dire the jury panel on matters of implicit race bias.

**I.   ARGUMENT**

   **A.  Implicit Social Bias Poses A Challenge to Jury Selection.**

Jury impartiality is a core requirement of the right to trial by jury guaranteed by the U.S. Constitution. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." (internal citations omitted)).

Specifically, the Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI (emphasis added).

An impartial jury is one that has not formed an opinion prior to hearing and assessing all of the evidence, and one that bases its decision only on the assessment of the evidence not on pre-formed conclusions and biases. *See Morgan*, 504 U.S. at 727.

Implicit bias stands in stark contrast to impartiality. "Implicit bias" is a term of art referring to the formation of opinions based on the "relatively unconscious and relatively automatic features of prejudiced judgment and social behavior." *See* Brownstein, Michael, "Implicit Bias", The Stanford Encyclopedia of Philosophy (Spring 2017 Edition), Edward N. Zalta (ed.), available at https://plato.stanford.edu/entries/implicit-bias/. In other words, implicit bias draws conclusions based on pre-formed opinions rather than the evidence presented. In terms of juror impartiality, "[t]he theory of the law is that a juror who has formed an opinion cannot be impartial." *Morgan*, 504 U.S. at 727 (internal citation omitted). Drawing conclusions on the basis of "implicit bias" would contravene the core principle of impartiality of the Sixth Amendment.

The research group Perception Institute[1] offers the following definition of "implicit bias":

> Thoughts and feelings are "implicit" if we are unaware of them or mistaken about their nature. We have a bias when, rather than being neutral, we have a preference for (or aversion to) a person or group of people. Thus, we use the term "implicit bias" to describe when we have attitudes towards people or associate stereotypes with them without our conscious knowledge. A fairly commonplace example of this is seen in studies that show that white people will frequently associate criminality with black people without even realizing they're doing it.

"Implicit Bias," Perception Institute, available at https://perception.org/research/implicit-bias/.

The Sixth Circuit has explained the concept this way,

> The concept of "implicit bias" is defined, generally, as bias that is "not necessarily openly and explicitly expressed, but [is] harbored nonetheless." Implicit biases are "often not conscious, intentional, or maliciously—based," as opposed to explicit bias—generally defined as "bias that is openly expressed."

*United States v. Ray*, 803 F.3d 244, 260–61 (6th Cir. 2015) (citing Melissa L. Breger, *The (in)visibility of Motherhood in Family Court Proceedings,* 36 N.Y.U. Rev. L. & Soc. Change 555, 560 (2012).

---

[1] According to its website, the Perception Institute is a national consortium of social scientists, law professors, and advocates focusing on the role of the mind sciences in law, policy, and institutional practices. Its cofounders are Alexis McGill Johnson, of Princeton and Yale Universities, and Seton Hall University School of Law Professor Rachel Godsil renowned author and lecturer on issues of implicit bias and racial anxiety. *See* https://perception.org/about-us/team/

Massachusetts Appeals Court Justice Kenneth V. Desmond, Jr. has said, "[i]n the most basic sense, implicit bias is 'thoughts about other people you didn't know you had.' Consequently, it is often difficult for individuals who do not fall victim to the impact of certain biases to identify the ways they are manifested." Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit Bias Eradication*, Boston B.J., Summer 2016, at 3.

A plethora of scholarly articles support the theory that implicit social bias poses a challenge to legal practice in general, and to jury selection in particular because it can lead to erroneous assumptions that contravene the accused's Sixth Amendment right to a trial by an impartial jury. *See e.g., Ray*, 803 F.3d at 260–61 (citing Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge–Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'Y Rev. 149, 152 (2010); Jerry Kang & Kristin Lane, *Seeing Through Colorblindness: Implicit Bias and the Law*, 58 UCLA L. REV. 465, 465 (2010); Justin D. Levinson, *Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering*, 57 DUKE L.J. 345, 345 (2007)). *See also* Anna Roberts, *(Re)forming the Jury: Detection and Disinfection of Implicit Juror Bias*, 44 Conn. L. Rev. 827, 833 (2012); Cynthia Lee, *A New Approach to Voir Dire on Racial Bias*, 5 UC Irvine L. Rev. 843, 844 (2015) ("'Implicit biases' are discriminatory biases based on either implicit attitudes-feelings that one has about a particular group-or implicit stereotypes-traits that one associates with a particular group. They are so subtle that those who hold them may not realize that they do. . .   African-Americans, for example, are stereotypically linked to crime and violence; their behavior is more likely to be viewed as violent, hostile, and aggressive than is the behavior of whites; and they are more readily associated with weapons than are whites."); Dale Larson, *A Fair and Implicitly Impartial Jury: An Argument for Administering the Implicit Association Test During Voir Dire*, 3 DePaul J. for Soc. Just. 139, 154 (2010) ("Implicit bias against socially underprivileged groups and outgroups is prevalent in our culture. As a result, there is a chance

that implicit bias is present anytime a member of such a group is the defendant in a criminal trial."); Siegfried C. Coleman, *Reliance on Legal Fiction: The Race-Neutral Juror*, 41 S.U. L. Rev. 317 (2014) ("This article highlights the notion that these unchecked biases are alive and well in all jurors as an innocent and necessary human characteristic and advocates the position that these biases should be acknowledged and formally addressed."); Hon. Kenneth V. Desmond, Jr., *The Road to Race and Implicit Bias Eradication*, Boston B.J., Summer 2016, at 3 ("Throughout the past several decades, State and Federal appellate courts have candidly acknowledged the implicit biases of litigants and jurors.").

### B. Ferreting Out Implicit Bias is Essential to the Selection of an Unbiased Jury in This Case.

Joquentz Constant is a Black man accused of possessing a loaded firearm that was discovered after police chased him.

The issue of suspected gun possession by African-America males and the growing tension between the police and communities of color, has been a hotly discussed issue in the United States.   In light of these issues, as well as the abundance of research documenting the existence of implicit race bias, it is essential to acknowledge Mr. Constant's race and some of the implicit biases that may present in this case.    His race may evoke many presuppositions in the minds of the jurors.   Such presuppositions need to be ferreted out and frankly discussed to allow for a fair trial.   Direct and thorough inquiry into the potential jurors' perceptions would sift out this type of implicit bias and identify prospective jurors who may have predetermined key issues relevant to Mr. Constant's trial. Such inquiry will also assist both the Court and the lawyers to determine whether the prospective jurors can consciously put aside any such bias.

### C. A Thorough Voir Dire on Implicit Race Bias is Important to the Proper Exercise of Peremptory Challenges.

The Constitution prohibits the exercise of racially discriminatory peremptory challenges. *See Georgia v. McCollum*, 505 U.S. 42, 48 (1992).    Under *Batson v. Kentucky,* 476 U.S. 79 (1986), and its progeny, including *McCollum* and *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127 (1994), no party can exercise peremptory challenges based on personal race biases, gender biases

or prejudices. Under the prevailing case law, where there is a *prima facie* case of racial discrimination in the exercise of a party's peremptory challenges, a party "must articulate a racially neutral explanation for the peremptory challenge." *McCollum,* 112 S.Ct. at 2359; *see Batson,* 476 U.S. at 98. To enable Mr. Constant to exercise his peremptory challenges intelligently and adequately, and to ensure that the challenges can be supported by a race and gender neutral explanation, individualized voir dire is essential.

> The Supreme Court's decision in *J.E.B*. declared:
>
> If conducted properly, voir dire can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently. *See, e.g., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 602 . . . (1976) (Brennan, J., concurring in judgment) (voir dire 'facilitate[s] intelligent exercise of peremptory challenges and [helps] uncover factors that would dictate disqualification for cause'); *United States v. Whitt*, 718 F.2d 1494, 1497 (CA10 1983) ('Without an adequate foundation [laid by voir dire], counsel cannot exercise sensitive and intelligent peremptory challenges').

*J.E.B. v. Alabama ex rel. T.B*., 511 U.S. 127, 143–44 (1994).

As Justice O'Connor pointed out in her concurring opinion in *J.E.B.,* litigants can no longer simply rely on their intuition in exercising peremptory challenges. Fairness dictates that the lawyers be permitted the opportunity to voir dire the jury panel to ensure that a fair and impartial jury is selected consistent with the dictates of *Batson* and its progeny.

### D. Attorneys are in a Better Position than the Court to Question the Jurors About Implicit Race Bias in this Case.

Discussing some of the shortfalls of judge conducted voir dire, U.S. District Court Judge Mark Bennett, of the Northern District of Iowa, acknowledged that, in testing for prospective jurors' biases, judges commonly ask questions such as, 'Can all of you be fair and impartial in this case?'" *See* Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge–Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'Y Rev. 149, 152 (2010). While jurors almost uniformly answer that they can be fair, *Id.* 159, Judge Bennett noted that merely asking potential jurors that

question does little or nothing to ferret out implicit bias, in part, because the question itself presumes that implicit bias is consciously known to the prospective juror, even though by its nature an implicit bias is not consciously known to the prospective juror. *See id.* ("Thus, a trial court judge schooled in the basics of implicit bias would be delusional to assume that this question adequately solves implicit bias.").

Indeed, according to the National Center for State Courts, social scientists have observed that simply asking people to report their attitudes about race and fairness is a flawed approach because most people do not consciously recognize their own implicit biases, or they may not wish or may not be able to accurately report their own bias. "This is because people are often unwilling to provide responses perceived as socially undesirable and therefore tend to report what they think their attitudes *should* be rather than what they know them to be. More complicated still, people may not even be consciously aware that they hold biased attitudes."[2]

Judge Bennett opined that lawyers are in the better position to determine how implicit biases might affect the outcome of a case because they usually know the case better than the trial judge.   *See* Bennett, 4 Harv. L. & Pol'y Rev. 149 at 160.   In Mr. Constant's case, the lawyers are familiar with the physical attributes and alleged actions of the defendant as well as those of the witnesses and all persons present at the scene of the alleged crime.   They are also familiar with the nature of the item seized and the location of the alleged offense. Based on this type of information, the attorneys can formulate relevant questions that reveal prospective jurors' biases and evaluate the answers with an eye toward the particulars of this case.

As further support in favor of attorney-led voir dire in the area of implicit bias, Judge Bennett pointed to both his own experience and empirical research which suggests that prospective jurors tend to give judges answers that they believe are socially desirable – answers that the judge wants to hear - whereas they respond more candidly to lawyers.   *Id.* (citing Susan E. Jones, Judge- Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor, 11 Law & Hum. Behav. 131 (1987)).   Indeed, after being told by the court that all jurors must be fair and impartial, when asked whether they can be fair and impartial on issues of

---

[2] National Center for State Courts, Helping Courts Address Implicit Bias, Frequently Asked Questions, What is Implicit Bias?, available at http://www.ncsc.org/~/media/Files/PDF/Topics/Gender%20and%20Racial%20Fairness/Implicit%20Bias%20FAQs%20rev.ashx (last visited May 27, 2017).

race it would be difficult for prospective jurors to confess frankly the ways in which they may be biased.

## CONCLUSION

For the reasons stated above, the Court should permit defense counsel and the government's lawyer to voir dire the potential jurors on matters of implicit racial bias to enable an accurate assessment of the potential jurors and their relevant biases and to enable effective and adequate exercise of peremptory challenges during juror selection.

Respectfully submitted,
JOQUENTZ CONSTANT
By his Attorney,

/s/ Charles P. McGinty
Charles P. McGinty
B.B.O. #333480
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA   02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 29, 2019.

*/s/ Charles P. McGinty*
Charles P. McGinty