UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Crim. No. 1:19-cr-10016-DPW-1 |
| JOQUENTZ CONSTANT, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully asks this Court to sentence Joquentz Constant ("Constant" or "the defendant") to 33 months' imprisonment, followed by three years of supervised release. The government's requested sentence is at the low end of the advisory Guidelines range of 33-41 months. A low-end Guidelines sentence is necessary to punish the defendant, to deter him and others from committing similar crimes in the future, and to protect the residents of the neighborhoods where Constant has been committing crimes for much of his adult life.

## THE OFFENSE OF CONVICTION

The offense of conviction in this case is accurately described in the PSR prepared by the U.S. Probation and Pretrial Services Office ("Probation Office"). *See* PSR, at ¶¶ 7-11. Given the Court's familiarity with the facts of the defendant's § 922(g) offense from the trial, only those aspects that reflect on the seriousness of Constant's offense bear repeating. The first is Constant's attempt to get rid of a loaded gun by discarding it onto the sidewalk of Columbia Road, where, had it not been immediately recovered by the police, it could have been found by others residing in the area or by pedestrians attending Boston Caribbean Festival weekend, one of the busiest and most violent weekends in the city.[1] *Id.* at ¶ 10. This conduct demonstrates

---

[1] In addition to the testimony at trial, *see generally* "Boston Police Officer Injured in Area of city's Caribbean Festival, officials say" WCVB, available at https://www.wcvb.com/article/boston-police-officer-injured-in-area-of-citys-caribbean-festival-on-blue-hill-avenue-officials-

1

disregard for not only the law enforcement officers pursuing him, but for the community as a whole.² Additionally, the firearm contained a spent shell casing (demonstrating it had been fired) and its serial number was obliterated, purposefully rendering it untraceable to law enforcement. Because of the obliterated serial number, the defendant's offense level is increased by 4 points. *See* § 2K2.1(b)(4)(B); PSR at ¶ 17.

## SENTENCING GUIDELINES

### A. The Advisory Guidelines

The final PSR in this case was issued on May 19, 2020. The parties and the Probation Office are in agreement that the relevant advisory Guidelines sentencing range is 33-41 months, based on a total offense level of 18 and a criminal history category of III. PSR at ¶ 70.

---

say/28806209 (August 24, 2019) (detailing shooting of Boston Police Officer on corner of Blue Hill Avenue and Warren Street and noting four separate shootings occurred within ten hours, one of which was fatal); "5 Shot, 1 Killed in Overnight Violence Across Boston" WCVB, available at https://www.wcvb.com/article/5-shot-1-killed-in-overnight-violence-across-boston/8226049#; (August 29, 2015) (quoting Boston Police Commissioner William Evans stating that "the night leading up to J'ouvert and the Caribbean Festival always proves to be one of the most violent of the year."); "A Beautiful Person Inside and Out—Dorchester shooting Victim Remembered" WBUR, available at https://www.wbur.org/news/2014/08/31/dawnn-jaffier-funeral-dorchester-shooting (August 31, 2014)(describing fatal shooting of 26 year-old youth worker on the morning of 2014 Boston Caribbean Festival).

² While the government does not seek this enhancement here, "[i]t is of course true that simply leaving a weapon in a public place can amount to reckless endangerment [under USSG § 3C1.2]." *United States v. Lard*, 327 F.3d 551, 554 (7th Cir. 2003) (affirming enhancement where gun was tossed with round in the chamber and safety off). Numerous other cases have upheld reckless endangerment enhancements against a defendant who discarded a gun in an area where it was likely to be recovered by a third party. *See e.g.*, *United States v. May*, 430 Fed. Appx. 520, 526-27 (6th Cir. 2011) (finding that it was reckless to discard a loaded firearm in a public housing complex where it would likely be found by someone because such conduct is a gross deviation from the standard of care that a reasonable person would exercise); *United States v. Rogers*, 423 Fed. Appx. 636, 640 (7th Cir. 2011) ("[H]e discarded a loaded revolver in a residential neighborhood at night, creating a substantial risk that someone would find it and get hurt.").

### B. Factors Supporting the Government's Requested Sentence

The government's requested sentence of 33 months' imprisonment is supported by the seriousness of the defendant's gun offense, the persistence of his criminal record, the increasing severity of his crimes, and a record of prison misconduct.

### 1. The Seriousness of The Offense and General Deterrence

Ultimately, reducing violence in Boston must involve disarming those carrying illegal guns *before* they are able to use them and convincing other young men to put away their weapons before they head out to the street. *See generally United States v. Dillard*, 214 F.3d 88, 93 (2nd Cir. 2000) ("The prohibition of gun possession by previously convicted criminals seeks to protect society by reducing the risk of violence that may result from the possession of guns by persons inclined to crime. By possessing guns in violation of that law, previously convicted criminals increase the risk that they may engage in violent acts. The risk results from the nature of the offense."). This Court's message in imposing a Guidelines sentence in this case plays an important role in deterring both this defendant and other individuals from committing the same type of crime. *See* 18 U.S.C. § 3553(a)(1)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct). Through its decisions in cases such as this one, this Court is in a unique position to send a message to the target audience—those perpetrating violence in Boston.

The government anticipates that the defendant will seek a sentence of time served, nearly a 50 percent reduction below the low end of the advisory Guidelines sentencing range. The imposition of a time-served sentence both fails to reflect the seriousness of the offense and risks sending a message that the conduct at issue, the illegal possession of a firearm, is not serious enough to warrant a more stringent punishment.

### 2. The Defendant's Criminal History and Specific Deterrence

Despite his multiple adult convictions stemming from a string of breaking and entering incidents beginning at age 18, he has only spent 9 months in prison prior to the instant case. *See* PSR at ¶¶ 27-31. As evidenced by his prior suspended sentences, the defendant has been shown leniency, but has nonetheless continued to make poor decisions in spite of it.[3] As evidenced by the defendant's escalating conduct soon after his release, the prior 9-month prison sentence was not a sufficient deterrent.

This aspect of the defendant's criminal history is noteworthy, even absent convictions. *See United States v. Load-Aponte*, 689 F.3d 791, 792 (1st Cir. 2012) (stating that a series of past arrests "might suggest a pattern of unlawful behavior even in the absence of any convictions"). Focusing on his most recent arrests, Constant maintains a persistent presence around firearms. *See* Boston Police Department ("BPD") Summary Report (Redacted), attached hereto as <u>Exhibit 1</u>, at pages 6-8.

For example, in November of 2017, Constant was arrested and charged in connection with a home invasion in which he and three other individuals broke a lock and forcibly entered a residence while numerous victims were present. *See id.* at 6; PSR at ¶ 37. Constant and the three other perpetrators kicked down doors inside the residence. *Id.* One victim reported being pistol whipped on the side of his neck. *Id.* While the case was ultimately nolle prossed, the incident report explicitly noted the existence of victim safety concerns. *Id.*

---

[3] The government has considered the defendant's personal characteristics and background in formulating the recommended sentence. In this case, Constant reports he grew up in a stable home where all of his basic needs were met. PSR, at ¶ 41. He maintains a close relationship with family members. *Id.* at ¶ 48. And he has no significant physical, mental, or emotional impairments, and no history of substance abuse. *Id.* at ¶ 59. In short, there is no explanation in his background and upbringing for his persistent and escalating unlawful conduct.

In addition, the defendant has a significant pending case. In February of 2018—a mere three months following the home invasion and approximately six months before the facts underlying the instant case—Constant was arrested and charged in connection with carjacking, armed robbery, and assault and battery with a dangerous weapon. PSR at ¶ 35. In that incident, Constant allegedly carjacked a victim and robbed him at gunpoint. *Id.;* BPD Incident Report at page 8. While the government recognizes these incidents are not convictions, they demonstrate a pattern of troublesome choices and associations, even following a 9-month prison sentence.

### 3. The Defendant's Prison Misconduct

The defendant has had several disciplinary issues during his incarceration for the instant offense, including both violent and non-violent infractions. *See* PSR, at ¶ 4. Constant's non-violent infractions include disobeying direct orders from prison guards (April 25, 2019), abuse of the telephone system to discuss gang-related activities (October 20, 2019), and passing suspected contraband and notes regarding suboxone (December 7, 2019). Constant was also involved in a physical altercation (December 19, 2019). Constant's continuing disciplinary issues demonstrate that he continues to struggle with respect for authority and with making good decisions, even in a highly regulated environment. *See United States v. Keys*, 899 F.2d 983, 989 (10th Cir. 1990) ("a prison disciplinary record may, in appropriate situations, be a proper basis for an upward departure").

## **CONCLUSION**

The government respectfully requests that the Court impose a low end Guidelines term of incarceration of 33 months, followed by three years of supervised release. This sentence is sufficient but not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553(a).

                    Respectfully submitted,

                    ANDREW E. LELLING
                    United States Attorney

By:   */s/ Mackenzie A. Queenin*
        MACKENZIE A. QUEENIN
        DAVID J. D'ADDIO
        Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I certify that, on May 19, 2020, this document filed through the ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    */s/ Mackenzie A. Queenin*
                    Mackenzie A. Queenin